UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID ROBERT SEASTROM,

        Plaintiff,

v.

UNKNOWN JENNETT et al.,

        Defendants.

_____/

Case No. 1:19-cv-637

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kowalski, Brawley, Harris, and Nagy.

## Discussion

### I.     Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues the following LCF officials: Correctional Officer Unknown Jennett; Assistant Resident Unit Manager Unknown Kowalski; Hearing Investigator Unknown Brawley; Hearing Officer S. Harris; and Warden Noah Nagy.

Plaintiff alleges that, on April 21, 2019, he asked Defendant Jennett if he could go to health care for medical treatment, because he was experiencing severe back problems, including problems walking. Defendant Jennett denied the request, saying that Plaintiff did not need medical attention. He also threatened Plaintiff with a major misconduct charge for being out of place. Defendant Jennett yelled at Plaintiff for making his request and told Plaintiff that he was a "liar" and a "Sissy Boy." (Compl., ECF No. 1, PageID.4.) When Plaintiff asked why Jennett was treating him badly, Jennett responded that he was in charge and could do whatever he wanted.

Plaintiff asked to speak with a sergeant, one of Defendant Jennett's supervisors. Defendant Jennett refused to allow Plaintiff to contact the sergeant. Jennett became more aggressive with his name-calling and spit in Plaintiff's face, as if he wanted to fight. (*Id.*) Ultimately, Defendant Jennett charged Plaintiff with a major misconduct and had him taken to segregation. As he was being escorted to segregation, an unnamed sergeant called Plaintiff a "Child Toucher." (*Id.*)

The officer who escorted Plaintiff to segregation noticed that he was having trouble walking. The officer arranged for a wheelchair and took Plaintiff to health care. The nurse on duty told the sergeant that Plaintiff's back muscles were extremely tight. Nevertheless, the sergeant continued to call Plaintiff a liar and a child toucher. Plaintiff claims that Jennett's conduct amounted to cruel and unusual punishment and deliberate indifference to Plaintiff's serious medical needs, in violation the Eighth Amendment.

Plaintiff alleges that Defendant Kowalski told Plaintiff on May 7, 2019, that Defendant Jennett was "way out of line" on the day of the incident, but she could not say anything about it unless someone from the administration asked her. She indicated that inmates who had witnessed the incident were too afraid to come forward because they feared retaliation. Kowalski told Plaintiff that she would assist him with copying the Hearing Investigation Report, once it was received. According to Plaintiff, Defendant Kowalski's failure to volunteer evidence to the hearing investigator and hearing officer amounted to dereliction of duty, support of cruel and unusual punishment, and deliberate indifference to the bullying and corruption of another staff member.

On May 7, 2019, Defendant Hearing Investigator Brawley failed to conduct an investigation of the misconduct charge. Brawley allegedly failed to interview any witnesses and chose to ignore his duties. Plaintiff alleges that Defendant Brawley's inaction amounted to dereliction of duty, support of cruel and unusual punishment, corruption, and deliberate indifference.

Defendant Hearing Officer Harris conducted a hearing on the misconduct charge. Plaintiff contends that Defendant Harris read the evidence statement, which consisted of Plaintiff's statement and those of two officers. Plaintiff asked why statements were not obtained from the prisoners who were present. Defendant Harris told Plaintiff to hold his questions and comments until after the evidence was reviewed. When he thought Harris was finished reviewing the evidence, Plaintiff again raised the question. Harris told Plaintiff to go back to his cell while the hearing continued outside his presence. Plaintiff subsequently received a Misconduct Hearing Report, indicating that he had been found guilty of the misconduct. Plaintiff claims that Defendant Harris violated his rights to present a defense and to confront witnesses, committed dereliction of

duty, deprived him of due process, and was deliberately indifferent to cruel and unusual punishment.

On May 19, 2019, Plaintiff filed a Step-II grievance to Defendant Nagy, complaining about the conduct of other officers. Nagy allegedly failed to investigate the allegations in the grievance, failed to supervise his subordinates, and failed to ensure that prisoners were treated humanely. Plaintiff alleges that Defendant Nagy's conduct amounts to neglect, corruption, cruel and unusual punishment, dereliction of duty, and deliberate indifference.

For relief, Plaintiff seeks compensatory damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

4

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Defendant Harris

Plaintiff sues Defendant Hearing Officer Harris, alleging that he deprived Plaintiff of a fair hearing, wrongfully decided the misconduct charge, and thereby supported the unconstitutional actions of Defendant Jennett. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's action fails because Defendant hearings officer is absolutely immune from suit for damages under the circumstances of this case.

## B. Defendant Nagy

Plaintiff fails to make specific factual allegations against Defendant Nagy, other than his claim that Nagy failed to supervise his subordinates and failed to conduct an adequate investigation into Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Nagy engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him.

## C. Defendants Brawley & Kowalski

Plaintiff alleges that Defendant Brawley failed to conduct an adequate investigation into the misconduct charge filed by Defendant Jennett. In addition he alleges that Defendant Kowalski failed to bring to the attention of Defendants Brawley and Harris the statements made by prisoner witnesses, who would have supported Plaintiff's defense to the misconduct charge. Plaintiff alleges that the actions and inactions of Defendants Brawley and Kowalsi amounted to a

dereliction of duty, deprived him of due process, and subjected him to cruel and unusual punishment.

### 1. Due process

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due

process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff does not indicate the penalty he suffered as a result of the misconduct conviction. However, under MDOC Policy Directive (PD) 3.03.105, Attach. D, the maximum sanction the hearing officer could have imposed is 10 days' placement in punitive segregation for each violation, not to exceed 20 days' segregation for all violations arising out of a single incident. *Id.*, ¶ A. In addition, the hearing officer could have imposed a loss of privileges for up to 30 days for each violation, not to exceed 60 days for all violations arising from a single incident. *Id.*, ¶ C.

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Because Plaintiff faced no more than 10 to 20 days of segregation, his penalty is less than that identified in *Sandin*, which the Supreme Court held was *not* atypical and significant. Even after adding a potential 30 days of room restriction, the restrictions that could have been imposed on Plaintiff were far less significant than the lengthy periods of segregation in *Mackey* and *Baker*, which did not implicate a liberty interest. Thus, Plaintiff's potential confinement in segregation and placement on room restriction did not trigger a right to due process.

Given that Plaintiff had no right to due process on the disciplinary charge, he had no due process interest in Defendant Brawley's investigation of the disciplinary charge. For the same reason, Defendant Kowalski's alleged failure to provide Defendants Brawley and Harris evidence of known witnesses did not deprive Plaintiff of due process. Accordingly, Plaintiff fails to state a due process claim against Defendants Brawley and Kowalski.

2. Cruel & unusual punishment

Plaintiff alleges that Defendant Brawley, by failing to perform his investigative duties, committed cruel and unusual punishment, in violation of the Eighth Amendment. Similarly, Plaintiff alleges that, by failing to provide evidence relevant to the misconduct hearing, Defendant Kowalski subjected Plaintiff to cruel and unusual punishment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges no conduct by Defendants Brawley or Kowalski that showed deliberate indifference to Plaintiff's health or safety. Even assuming that Defendant Jennett, by not taking action to address Plaintiff's serious back pain on April 21, 2019, was deliberately indifferent to Plaintiff's serious medical condition, Plaintiff ultimately was taken to health services by another officer later that same day. Defendant Jennett wrote the misconduct ticket that day, but it was not heard until May 7, 2019. The only actions or inactions attributed to Defendants Brawley and Kowalski relate to their failures to investigate and provide evidence on the misconduct charge—conduct that was unrelated to any claim by Plaintiff that he needed medical care. Such allegations utterly fail to demonstrate that, at the time of Defendant Brawley's and Defendant

Kowalski's actions or inactions, Plaintiff had an objectively serious medical need, much less that Defendants Brawley and Kowalski were aware of that need.

Moreover, even if Plaintiff intends to claim that Defendants Brawley and Kowalski were deliberately indifferent to Plaintiff's placement in segregation, Plaintiff fails to state an Eighth Amendment claim. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-03. To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that placement in segregation resulted in Plaintiff losing privileges, Plaintiff does not allege or show that such placement denied him basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not

allege a physical injury. *See* 42 U.S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Finally, Plaintiff suggests that, by not giving evidence in the misconduct hearing, Defendant Kowalski violated the Eighth Amendment by allowing Jennett to bully Plaintiff. Plaintiff fails to state a claim on this basis.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, the abusive language allegedly used by Defendant Jennett and the unnamed sergeant does not rise to the level of an Eighth Amendment

violation. As a matter of logic, therefore, Defendant Kowalski's failure to report Defendant Jennett's use of such language fails to state an Eighth Amendment claim.

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Brawley and Kowalski.

### 3. Dereliction of duty

Plaintiff alleges that the failures of Defendants Brawley and Kowalski to investigate and present evidence on the misconduct charge amounted to a dereliction of duty. With respect to Defendant Brawley, Plaintiff appears to base his claim on Defendant Brawley's failure to meet his obligations under MDOC Policy Directive 03.03.105(T)-(Z). Plaintiff does not allege that Defendant Kowalski violated any prison rule. Instead, he suggests that Kowalski simply had an obligation to come forward with confidential information.

Defendant Brawley's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Plaintiff utterly fails to identify any constitutional basis for his claim against Defendant Kowalski, beyond a suggestion that Defendant Kowalski's failure to provide evidence

on the misconduct charge deprived Plaintiff of due process. As the Court previously discussed, Plaintiff had no liberty interest in his misconduct proceedings and therefore no right to due process.

For these reasons, Plaintiff's dereliction-of-duty claims against Defendants Brawley and Kowalski fail to state an actionable claim under § 1983.

### D. Defendant Jennett

Upon initial review, Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Jennett.

### III. Motion to Appoint Counsel

Plaintiff has requested a court-appointed attorney. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 1) therefore will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kowalski, Brawley, Harris, and Nagy will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Jennett remains in the case. The Court also will deny Plaintiff's request to appoint counsel.

An order consistent with this opinion will be entered.


Dated:   October 15, 2019                        /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge